IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

CYNTHIA GEORGE,                           )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )      CIVIL ACTION NO. 3:23-CV-00297
                                          )
OVERALL   CREEK   APARTMENTS,             )      Judge Aleta A. Trauger
LLC; CHANDLER PROPERTIES, LLC;            )
B.L. BENNETT & ASSOCIATES, INC.;          )
DENHOLTZ 5150 JB OWNERF, LLC;             )
BBS TAFT 5150 JB OWNER; and CPJB          )
DRIVE OWNER, LLC,                         )
                                          )
          Defendants,                     )
                                          )
and                                       )
                                          )
OVERALL CREEK APARTMENTS,                 )
LLC and CHANDLER PROPERTIES,              )
LLC,                                      )
                                          )
          Third-Party Plaintiffs,         )
                                          )
v.                                        )
                                          )
NILES BOLTON ASSOCIATES, INC.,            )
                                          )
          Third-Party Defendant.          )

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Third-Party Defendant Niles Bolton Associates, Inc.'s

("NBA") Motion to Dismiss (Doc. No. 52) Third-Party Plaintiffs Overall Creek Apartments, LLC

and Chandler Properties, LLC's Third-Party Complaint. For the reasons set forth herein, the court

will **GRANT in part** and **DENY in part** NBA's Motion to Dismiss.

1

## I.    BACKGROUND

This is an action brought by Plaintiff Cynthia George against several entities for violations of the Fair Housing Act ("FHA"). (Doc. No. 1, at 11–12).[1] According to her Complaint, Plaintiff visited Overall Creek Apartments, located at 5150 Jack Byrnes Drive in Murfreesboro, Tennessee ("the Property"), where she looked at apartment units. (*Id*. at 7). During her visit, Plaintiff, who uses a wheelchair, "observed and encountered accessibility barriers that would interfere with her ability to access and use the facilities." (*Id*. at 2, 7).

On March 31, 2023, Plaintiff filed suit against the Property's "previous owner", Overall Creek, LLC ("Overall Creek"), as well as Overall Creek's current co-owners and two of its co-developers, Chandler Properties, LLC ("Chandler Properties") and B.L. Bennett & Associates, Inc. (*Id*. at 1, 3–4).[2] Plaintiff alleges, specifically, that Defendants violated the FHA, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3619, for failing to "design and/or construct apartments with accessible and useable features for" disabled individuals. (*Id*. at 8–10 (referring to Defendants' specific violations under §§ 3604(f)(1)–(f)(2), (f)(3)(C)).

In September of 2023, Overall Creek and Chandler Properties, pursuant to Rule 14 of the Federal Rules of Civil Procedure, moved the court for leave to file a third-party complaint against NBA to assert claims for equitable indemnification, equitable contribution, and breach of contract. (Doc. No. 38, at 1–2). The court granted Overall Creek and Chandler Properties' motion as

---

[1] Plaintiff also alleges violations under the Americans with Disabilities Act ("ADA") (Doc. No. 1, at 6, 10–11).

[2] The co-owners are BBS Taft 5150 JB Owner, LLC, CPJB Drive Owner, and Denholtz 5150 JB Owner. (Doc. No. 1, at 4). However, they are not relevant parties for purposes of resolving NBA's Motion to Dismiss.

2

unopposed. (Doc. No. 42). In their Third-Party Complaint, Overall Creek and Chandler Properties allege that NBA—"the architect for the design and construction of the Property"— had a duty to ensure that the Property was constructed in compliance with the FHA. (Doc. No. 43, at 3–4). They further allege that they relied on NBA's expertise "to design the Property to be compliant with all applicable codes, rules, and regulations." (*Id*.). To the extent that Overall Creek and Chandler Properties are liable to Plaintiff, they ask for "common law indemnification, and/or contribution from" NBA due to NBA's alleged "tortious conduct in providing its professional architectural services" and for NBA's alleged breach of contract. (*Id*. at 4–5). In this vein, Overall Creek and Chandler Properties demand judgment (1) granting them "indemnification and/or contribution against" NBA and (2) a finding that NBA is liable for breach of contract. (*Id*. at 8). In addition, they demand "costs and disbursements of this action and all other and further relief that this court deems just and proper." (*Id*.).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, NBA moves for dismissal of Overall Creek and Chandler Properties' Third-Party Complaint because "it avers only state law causes of action . . . for equitable indemnity, equitable contribution and breach of contract," which, NBA claims, "are all preempted under the FHA."[3] (Doc. No. 52-1, at 2). Overall

---

[3] Overall Creek and Chandler Properties reference the ADA passively in their Third-Party Complaint, (Doc. No. 43 ¶¶ 19, 41), which may explain why NBA appears to frame its preemption arguments only within the context of the FHA, even though it also cites opinions in which courts have decided whether the FHA *and* ADA preempt state-law claims. *See* Doc. No. 52, at 3 (stating that Overall Creek and Chandler Properties' claims "are preempted by the *FHA*" (emphasis added); *see also* Doc. No. 52-1, at 11 (requesting dismissal "because all of the claims asserted . . . are preempted by the *FHA*" (emphasis added)). *But see* Doc. No. 52, at 3 (quoting *United States v. Murphy Dev., LLC*, No. 3:08-0960, 2008 WL 3614829, at *1 (M.D. Tenn. Oct. 27, 2009) for the proposition that "there is no express <u>or implied</u> right to indemnity or contribution under the FHA or ADA" (emphasis in original)). For purposes of this Memorandum, the court will only address NBA's preemption arguments within the context of the FHA.

Creek and Chandler Properties have filed a Response (Doc. No. 55), and NBA has filed a Reply (Doc. No. 57).

## II.     STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to test the legal sufficiency of a complaint. *Reeves v. PharmaJet, Inc.*, 846 F. Supp.2d 791, 795 (N.D. Ohio 2012); Fed. R. Civ. P. 12(b)(6) (allowing for dismissal of a complaint "for failure to state a claim upon which relief can be granted"). When faced with a Rule 12(b)(6) motion, a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). In addition, a court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2009) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). "[A] complaint will not be dismissed pursuant to Rule 12(b)(6) unless no law supports the claim . . . or an insurmountable bar appears on the face of the complaint." *Clevenger v. Dillards, Inc.*, 412 F. Supp. 2d 832, 840 (S.D. Ohio 2006).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some

viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (citation omitted). The plaintiff's factual allegations "must 'raise a right to relief above the speculative level.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F. 3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). "Conclusory allegations or legal conclusions masquerading as factual allegations" cannot survive a Rule 12(b)(6) motion to dismiss. *Bishop*, 520 F.3d at 519 (citation omitted).

## III. DISCUSSION

Overall Creek and Chandler Properties raise the following claims against NBA: (1) equitable indemnification and equitable contribution and (2) breach of contract. (Doc. No. 43, at 4–8). According to NBA, the court must dismiss Overall Creek and Chandler Properties' Third-Party Complaint because it raises "only state law causes of action" that are preempted under the FHA. (Doc. No. 52-1, at 2). In response, Overall Creek and Chandler Properties, by all appearances, do not dispute that they are asserting "only" state law claims or that they are "derivative claims in the sense that they arise *solely* based on [Overall Creek and Chandler Properties]'s actual or potential first-party liability [to Plaintiff] under" the FHA. *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F. Supp. 2d 814, 821 (D. Md. 2009). They counter, rather, that their state-law claims are not preempted under the FHA. (Doc. No. 55, at 3).

The court is unaware of a Sixth Circuit decision, and the parties do not cite one, that squarely addresses whether the FHA preempts state-law claims for indemnification, contribution, or breach of contract. *See Miami Valley Fair Hous. Ctr., Inc. v. Campus Vill. Wright State, LLC*, No. 3:10cv00230, 2012 WL 4473236, at *5 (S.D. Ohio Sept. 26, 2012) ("The Sixth Circuit declined to address whether the FHA permits or preempts state-law claims in contribution or indemnification."); *see also Murphy*, 2009 WL 3614829 at *1 ("The Sixth Circuit has not yet issued an opinion on whether the FHA or the ADA provide[s] an express or implied right to

5

indemnity or contribution."). The parties, therefore, devote a significant portion of their briefs to arguing which nonbinding case applies here, with NBA relying heavily on this court's decision in *Murphy*. The court, as a threshold matter, will consider *Murphy*'s application to this case.[4]

### A. *Murphy*'s Application

In *Murphy*, the plaintiff, United States of America, sued owners and developers of several multifamily apartment complexes. 2009 WL 3614829 at *1. Like Plaintiff herein, the plaintiff in *Murphy* claimed that the defendants violated the ADA and FHA, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988. *Id*.; (Doc. No. 1, at 1). The defendants/third-party plaintiffs in *Murphy* filed two third-party complaints against third-party defendants who were architects, engineers, and contractors allegedly involved in the design and construction of the apartment complexes. 2009 WL 3614829 at *1. The third-party plaintiffs asserted claims for express indemnity, implied indemnity, breach of contract, negligence, and violations of the FHA. *Id*. (emphasis added). Like NBA, the third-party defendants, under Rule 12(b)(6), moved for dismissal of the third-party plaintiffs' derivative state-law claims on the basis that "no express or implied right to indemnity or contribution" exists under the FHA. *Id*. at *1–2. This court agreed because it determined that the third-party plaintiffs' "state-law claims for express or implied indemnity and/or contribution" (1) were "*de facto* claims for indemnity and contribution that are preempted by federal law" and (2) "would frustrate the achievement of Congress' purposes

---

[4] Although *Murphy* is a decision by a former judge of this court, neither of the parties assert that it is binding, and caselaw supports that it is not. *See Camreta v. Greene*, 563 U.S. 692, 730 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the *same* judicial district, or even upon the same judge in a different case." (emphasis added) (internal quotation marks and citation omitted)); *see also Chinn v. Jenkins*, No. 3:02-cv-512, 2018 WL 488159, at *3 (S.D. Ohio Jan. 19, 2018) ("[D]ecisions of other judges of the same court are not binding precedent[.]").

6

in adopting the FHA and ADA." *Id*. (citing *Equal Rights Ctr.*, 603 F. Supp. 2d at 824). The court, therefore, dismissed the third-party plaintiffs' "derivative state-law indemnity and/or contribution claims" with prejudice. *Id*. at *4.[5]

According to NBA, *Murphy* is "remarkably similar to the case at bar", because this court analyzed whether a third-party plaintiff "may maintain state law causes of action for equitable indemnification, equitable contribution, and breach of contract in the context of an FHA claim." (Doc. No. 52-1, at 5). This court in *Murphy*, NBA argues, "*specifically* held that 'there is no express or implied right to indemnity or contribution under the FHA or ADA.'" (*Id*. at 10 (emphasis in original) (quoting *Murphy*, 2009 WL 3614829 at *1)). In addition, NBA points out that one intra-circuit court and "federal courts in numerous other jurisdictions" have "lauded" this court's rationale in *Murphy* "in dismissing indemnity and contribution claims" arising under the FHA. (*Id*. at 8–9 (citing *Miami Valley*, 2012 WL 4473236 at *4; *United States v. Bryan Co.*, No. 3:11-CV-302-CWR-LRA, 2012 WL 2051861, at *4 (S.D. Miss. June 6, 2012); *Indep. Living Ctr. of S. Cal. v. City of L.A.*, No. CV120551FMOPJWX, 2014 WL 12586243, at *5 (C.D. Cal. Sept. 23, 2014))). NBA insists, therefore, that *Murphy* "unquestionably and categorically requires dismissal" of Overall Creek and Chandler Properties' Third-Party Complaint. (*Id*. at 9).

In response, Overall Creek and Chandler Properties argue that *Murphy* is distinguishable from this case. First, they suggest that the claims the third-party plaintiffs asserted in *Murphy* are different from theirs because Overall Creek and Chandler Properties are "merely asserting" that NBA "should assume its equitable apportionment of responsibility to the extent that, by their *own*

---

[5] The court in *Murphy* dismissed the third-party plaintiffs' state-law claim for breach of contract without prejudice, "leav[ing] it to the state courts to determine whether such [a] claim[]" is "viable." 2009 WL 3614829 at *2 (citation omitted).

7

actions, they have violated the FHA and committed tortuous [sic] actions[,]" (Doc. No. 55, at 4 (emphasis added)), unlike *Murphy,* in which the third-party "plaintiff attempt[ed] to shift *all* liability onto a third-party defendant[,]" (*id.* (emphasis in original)).[6] Second, Overall Creek and Chandler Properties state elsewhere in their Response, without citing *Murphy* specifically, that the cases NBA cites "do not apply to Third-Party Plaintiff's equitable indemnification[] and equitable contribution" claims. (*Id.* at 2). The court interprets their arguments to assert that (1) *Murphy* involved only claims for indemnification, not contribution; (2) Overall Creek and Chandler Properties are *only* asserting a claim for contribution, not indemnification, and therefore, *Murphy* does not apply (*see id.* (stating that they "are merely asserting" that NBA should assume its "apportionment of responsibility")); and (3) Overall Creek and Chandler Properties' *equitable* state-law claims for indemnification and contribution are distinct from state-law claims for *implied* indemnification and contribution.

In reply, NBA states that Overall Creek and Chandler Properties' claims for "equitable contribution and equitable indemnification are not somehow unique or novel such that" they "can avoid this Honorable court's holding in *Murphy*." (Doc. No. 57, at 3). "Rather, they are ordinary state law claims that routinely arise in construction disputes"—claims that they insist, as *Murphy* held, are preempted under the FHA. (*Id.*). In addition, NBA argues that *Murphy* "simply does not address these considerations"—that is, whether this court in *Murphy* based its holding solely on when a third-party plaintiff attempts to shift *all* liability onto a third-party defendant, as Overall Creek and Chandler Properties argue. (*Id.*). Accordingly, NBA maintains that *Murphy* "does not narrow or limit its holding in the manner stated by" Overall Creek and Chandler Properties, "which

---

[6] Put simply, Overall Creek and Chandler Properties argue that they are asserting claims for contribution, whereas the parties in *Murphy* only asserted claims for indemnification.

is presumably why the Response fails to cite or quote pertinent excerpt from the decision in support of these arguments." (*Id.*). In addition, NBA states that Overall Creek and Chandler Properties argue, "[p]uzzlingly," that they are *not* asserting a claim for *indemnification*. (*Id.* (emphasis added)).

The court partly agrees with Overall Creek and Chandler Properties' attempts to distinguish *Murphy* from this case for the following reasons. First, Overall Creek and Chandler Properties' assertion that the third-party plaintiffs in *Murphy* were not seeking *equitable* contribution and *equitable* indemnification is correct. But they do not explain the legal significance between claims for implied indemnity and implied contribution, some of the claims at issue in *Murphy*, and their claims for *equitable* indemnity and *equitable* contribution. 2009 WL 3614829 at *1. And Overall Creek and Chandler Properties do not otherwise cite a case in which courts have made a distinction between claims for *equitable* contribution or indemnification and claims for *implied* contribution or indemnification.[7] Therefore, their attempt to distinguish *Murphy* on this basis alone is unpersuasive.

Second, the court does not read *Murphy* as basing its "holding on when a plaintiff attempts to shift *all* liability"—or, in other words, as basing its holding on *only* claims for indemnification—because the third-party plaintiffs appeared to raise claims for indemnification *and* contribution. *See* 2009 WL 3614829 at *2 (dismissing third-party plaintiffs' "state-law claims for express or

---

[7] Overall Creek and Chandler Properties *do* cite a Ninth Circuit decision for the proposition that the court in that case found that the ADA, "similar to the FHA, does not preempt state law claims of . . . *equitable* contribution." (Doc. No. 55, at 5 (emphasis added)) (citing *City of L.A. v. AECOM Serv.*, 854 F.3d 1149, 1156 (9th Cir. 2017)). But the Ninth Circuit does not use the language "equitable contribution" anywhere in its opinion; the Ninth Circuit, rather, construed the third-party plaintiff's claim for express contractual indemnification against the third-party defendant as a *de facto* claim for contribution. *AECOM Serv.*, 854 F.3d at 1156.

9

implied indemnity and/or contribution"); *see also* No. 3:08-cv-00960, Third-Party Pls.' First Am. Compl., ECF No. 79 ¶ 36 ("Third-party defendants are therefore liable to defendants/third-party plaintiffs for *contribution* of a portion of (a) the damages and costs paid by defendants/third-party plaintiffs to the United States[.]" (emphasis added)). And to the extent that Overall Creek and Chandler Properties maintain that they are *only* asserting claims for contribution and not indemnification, that assertion stands in stark contrast to the claims they raise in their Third-Party Complaint. It is inescapable that they are asserting a claim for indemnification, as well as one for contribution. (*See* Doc. No. 43, at 4 (asserting a claim for "Equitable Indemnification *and* Equitable Contribution") (emphasis added); *id*. at 5 (seeking "any *or all* damages attributed to Defendants/Third Party Plaintiffs be shifted to Niles Bolton") (emphasis added))); *see also Bryan Co.*, 2012 WL 2051861 at *2 ("The . . . use of the word 'all' supports that the Bryan Defendants sought to shift all of their potential liability to others. This is a claim for indemnification[.]" (citation omitted)).[8]

However, to the extent that Overall Creek and Chandler Properties argue that *Murphy* does not apply to their claims for contribution, the court agrees because *Murphy* did not appear to view claims for indemnification and contribution as distinct theories of liability. *See Clover Cmty. Beavercreek, LLC, Mussachio Architects, P.C.*, 676 F. Supp. 3d 82, 88 (N.D. N.Y. 2023) (recognizing that a "number of district courts," including *Murphy*, "conclude[d] that state-law claims for contribution, as well as indemnification, are preempted by the FHA" (emphasis added)). Accordingly, this court in *Murphy* concluded that claims for both indemnification and contribution are preempted under the FHA without explaining how a claim for contribution, which only

---

[8] For reasons discussed later in this opinion, the court finds that Overall Creek and Chandler Properties are also asserting claims for contribution.

"requires each wrongdoer to pay his proportionate . . . share" frustrates the FHA's purpose. *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F. 2d 1101, 1103 (4th Cir. 1989); *see Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (explaining that state law is preempted under federal law when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). And for the reasons the court will discuss later in this opinion, it does not view *Murphy*'s rationale, as applied to Overall Creek and Chandler Properties' state-law claim for *contribution*, as especially persuasive based on more recent cases. *See Cnty. of Livingston v. PSA-Dewberry, Inc.*, No. 19-CV-01334, 2023 WL 5962079, at *6 (C.D. Ill. Sept. 13, 2023) (holding that *de facto* claim for contribution is not preempted under federal law); *Clover Cmty.*, 676 F. Supp. 3d at 89 (concluding "that Plaintiffs' contribution claim is not barred by obstacle preemption under the FHA").

In sum, the court is not persuaded that *Murphy* is entirely inapposite to this case, but it also does not find that *Murphy* "unquestionably and categorically requires dismissal" of *all* of Overall Creek and Chandler Properties' claims, as NBA argues. (Doc. No. 52-1, at 9). Instead, the court views *Murphy* as instructive as to whether Overall Creek and Chandler Properties' state-law claims are preempted under the FHA. In addition, "in the absence of supervening case authority from the Supreme Court or Court of Appeals," this court may consider nonbinding opinions, such as *Murphy*, to determine whether Overall Creek and Chandler Properties' state-law claims are preempted under the FHA. *Chinn*, 2018 WL 488159 at *3; *see Hawkins v. City of Inkster*, 768 F. App'x 304, 307 (6th Cir. 2019) ("The district court did not err in considering nonbinding opinions where no binding authority spoke to the issue presented.").

**B. Analysis Under Rule 12(b)(6)**

Preemption is an affirmative defense under Rule 12(b). *Hayslett v. Tyson Foods, Inc.*, No. 1:22-cv-1123, 2023 WL 3666091, at *3 (W.D. Tenn. May 25, 2023). A defendant, therefore, "bears the burden of proof in establishing preemption as grounds for dismissal." *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Prac. Litig.*, 65 F.4th 851, 859 (6th Cir. 2023) (citing *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir. 2007)).

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "When state and federal laws clash, federal law reigns supreme and state law is preempted." *McDaniel v. Upsher-Smith Lab'y, Inc.*, 893 F.3d 941, 944 (6th Cir. 2018) (citing *id.*). State-law claims can be preempted expressly in a federal statute or impliedly, "where congressional intent to preempt state law is inferred." (*Id.* (citation omitted)). The parties do not argue that the FHA expressly preempts state-law claims. The court will therefore limit its analysis to whether Overall Creek and Chandler Properties' state-law claims are "impliedly preempted" under the FHA. *Id.* at 948.

The Sixth Circuit has recognized two kinds of implied preemption: field and conflict. *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 583–84 (6th Cir. 2012). Field preemption applies when "'pervasive' federal regulation 'preclude[s] enforcement of state laws on the same subject.'" *Id.* at 584 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Conflict preemption comes in two forms. *Torres v. Precision Indus., Inc.*, 995 F.3d 485, 492 (6th Cir. 2021). The first is impossibility preemption, which occurs "when it is impossible to comply with both federal and state regulations." *Id.* (citation omitted). The other is obstacle preemption, which occurs "when the state law is an obstacle to the accomplishment and execution of the federal scheme." *Id.* (internal quotation marks and citations omitted).

12

Obstacle preemption applies in this case because the issue is whether Overall Creek and Chandler Properties' state-law claims stand as "an obstacle to the accomplishment and execution" of the FHA. *Id.* (internal quotation marks and citations omitted); *see Bryan Co.*, 2012 WL 2051861 at *3 (applying obstacle presumption when determining whether state-law claims were preempted under the FHA); *Miami Valley*, 2012 WL 4473236 at *6 (finding "state law claims [for indemnification and contribution] preempted under the doctrine of obstacle preemption"). When determining whether a state law operates as a sufficient obstacle, courts must examine the federal statute as a whole and identify its purpose and intended effects. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 366, 373 (2000); *see Wyethe v. Levine*, 555 U.S. 555, 565 (2009) "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." (quotation marks and citations omitted)). "The mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption[.]" *Torres v. Precision Indus., Inc.*, 437 F. Supp. 3d 623, 643 (W.D. Tenn. 2020) (internal quotation marks and citation omitted). As the Supreme Court explained, "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). The court, therefore, "starts with the assumption" that Congress, in enacting the FHA, did not intend to preempt Overall Creek and Chandler Properties' state-law claims unless "that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230.

1. Claim 1: State-Law Claims for Equitable Indemnification and Equitable Contribution

   a. *Indemnification*

First, the court will consider whether Overall Creek and Chandler Properties' state-law claim for indemnification is preempted under the FHA. (Doc. No. 43, at 4–5 (asserting "Equitable Indemnification" and "common law indemnification" claim)). Indemnification "involves shifting

13

the entire loss from one wrongdoer to another." *Baker, Watts & Co.*, 876 F. 2d at 1103 (citation omitted).

District courts that have considered whether state-law claims for indemnification are preempted under the FHA have applied the Fourth Circuit's legal rationale in *Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597 (4th Cir. 2010)—a decision that NBA also cites in its Motion to Dismiss. (Doc. No. 52-1, at 6–7, 9–11); *see, e.g.*, *Miami Valley*, 2012 WL 4473236 at *3–5 ; *Bryan Co.*, 2012 WL 2051861 at *3 (applying *Equal Rights Center* to "novel question" of "whether state law indemnification claims would conflict with federal law") (internal quotation marks and citation omitted)). The Fourth Circuit in *Equal Rights Center* affirmed the district court's decision granting summary judgment in NBA's favor, and both opinions are persuasive because the Fourth Circuit and district court thoroughly examined the legislative purpose and statutory scheme of the FHA in deciding whether state-law claims for indemnification are preempted under federal law. 602 F.3d at 601–02; *see Miami Valley*, 2012 WL 4473236 at *3 ("The United States Court of Appeals for the Fourth Circuit has provided a very comprehensive overview of the purpose and individual responsibilities under the FHA[.]").

In *Equal Rights Center,* the American Association of People with Disabilities, United Spinal Association, and the Equal Rights Center ("plaintiffs") filed suit against several entities, including NBA and Archstone Smith Trust and Archstone Operating Trust ("Archstone"). 603 F. Supp. 2d at 815–16. The plaintiffs claimed that the defendants violated the FHA, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3619, and the ADA, 42 U.S.C. § 12181. *Id*. at 816. The plaintiffs eventually settled with Archstone and NBA, and, as part of the settlement agreement, Archstone agreed to pay the plaintiffs $1.4 million in damages, attorney's fees, costs and other expenses. *Id*

14

Archstone, thereafter, filed a cross-claim for indemnity against NBA to recover the $1.4 million settlement payment to the plaintiffs. *Id*. Archstone asserted, in relevant part, a claim for implied indemnity that "rest[ed] on" state law. *Id*. at 823 ("Archstone plainly recognizes that federal law affords no remedy under the circumstance of this case; it makes no argument to the contrary. [I]t argues that it is entitled to indemnity under *state* law." (emphasis in original)). Archstone eventually moved for summary judgment on the issue of NBA's "liability for failure to design FHA-compliant housing[.]" *Id*. at 817. NBA filed a cross-motion for summary judgment, arguing that, "as a matter of settled principles of federal law," Archstone could not "seek, under state law, indemnification[.]" *Id*.

The district court agreed with NBA. In analyzing Archstone and NBA's positions, it relied on tenets of statutory construction similar to those applied by the Supreme Court in *Northwestern Airlines*, *Inc. v. Transport Workers Union of America,* 451 U.S. 77, 90 (1981). *Id*. at 821–22. In doing so, it began its analysis with the "well-settled" principle that, "as a matter of federal jurisprudence, [] a right of indemnity . . . may be created" by Congress, "either explicitly or by judicial implication from discovered Congressional intent[.]" *Id*. at 821. Also consistent with *Northwestern Airlines*, the district court recognized that it had to examine the FHA's "legislative history, the purpose and structure of the statute, and the likelihood that Congress intended to supersede to supplement existing state remedies." *Id*. at 822 (citing *Northwestern Airlines*, 451 U.S. at 91).

Based on the purpose of the FHA and its statutory scheme, the district court determined that Congress intended to preempt state-law claims for indemnification. In enacting the FHA, the district court explained that Congress implemented a "comprehensive plan to root out disability discrimination in housing." *Id*. at 825. In addition, based on the FHA's "comprehensive legislative

15

scheme[,]" the district court reasoned that Congress "deliberately . . . intended that each co-defendant have a non-indemnifiable, nondelegable duty to comply with the FHA and to compensate others for its own conduct." *Id*. (emphasis omitted) (citation omitted). The district court, therefore, described a claim for indemnification—in which a wrongdoer could allocate the *full* risk of liability to another—as "antithetical" to Congress's purpose in enacting the FHA because it would allow the wrongdoer to "contract around their responsibilities under the statute." *Id*. at 824–25 (internal quotation marks and citation omitted). For these reasons, the district court held that the FHA preempted Archstone's state-law claim for indemnification under the doctrine of obstacle preemption. The Fourth Circuit affirmed. *Equal Rights Ctr.*, 602 F.3d at 600, 602 ("[T]he regulatory purposes of the FHA . . . would be undermined by allowing a claim for indemnity.").

*Equal Rights Center* persuades this court to reach the same conclusion regarding Overall Creek and Chandler Properties' state-law claim for indemnification. Congress enacted the FHA to prohibit discrimination against handicapped individuals. 42 U.S.C. § 3604(f). If Overall Creek and Chandler Properties are liable to Plaintiff for any violations under the FHA, a claim for indemnification would enable them to escape liability because they could allocate the full risk of loss to NBA. *See Bryan Co.*, 2012 WL 2051861 at *5 ("Defendants cannot shift to their architect *all* of the liability they may have for building inaccessible housing." (emphasis added)); *Miami Valley*, 2012 WL 4473236 at *6 (stating that allowing "Cross-Claimants to seek indemnification [under state law] . . . would, in effect, completely insulate them from liability"); *cf. Baker, Watts & Co.*, 876 F. 2d at 1108 (determining that state-law claim for indemnification would "allow a securities wrongdoer . . . to shift its entire responsibility for federal violations on the basis of a collateral state action for indemnification"). Accordingly, a claim for indemnification "stands as

an obstacle to the accomplishment and execution of the full purposes and objectives" under the FHA, which is to ensure compliance with discrimination laws. *Hines*, 312 U.S. at 68; *see Equal Rights Ctr.*, 602 F.3d at 602 ("Allowing owner to completely insulate itself from liability . . . diminishes its incentive to ensure compliance with discrimination laws."). It is therefore preempted under the FHA.

To conclude, Overall Creek and Chandler Properties' state-law claim for indemnification is preempted under the FHA by the doctrine of obstacle preemption, and this claim fails as a matter of law. NBA's Motion to Dismiss Overall Creek and Chandler Properties' claim for indemnification under Rule 12(b)(6) based on preemption grounds will therefore be granted, and this claim will be dismissed with prejudice. *See Murphy*, 2009 WL 3614829 at *2 ("Because Third-Party Plaintiffs may not bring indemnity . . . claims against the Third-Party Defendants under the FHA or the ADA, the court will dismiss all such claims with prejudice for failure to state a claim[.]").

      b. _Contribution_

Next, the court will consider whether Overall Creek and Chandler Properties' state-law claim for contribution is preempted under the FHA. Contribution "requires each wrongdoer to pay his proportionate—or *pro rata*—share of the adverse judgment." *Baker, Watts & Co.*, 876 F. 2d at 1103 (citation omitted).

As a threshold matter, the court will address whether it should construe Overall Creek and Chandler Properties' Third-Party Complaint as raising a claim for contribution. *See Bryan Co.*, 2012 WL 2051861 at *2 ("The court will first resolve whether the . . . Defendants' cross-claim sought indemnity or contribution, since the two theories are distinct."). The language in two paragraphs of Overall Creek and Chandler Properties' Third-Party Complaint supports that they

are asserting a claim for contribution, because they state that they "are entitled to common law indemnification, and/or contribution from" NBA "on the basis of *apportionment* of responsibility for the alleged occurrence." (Doc. No. 43 ¶¶ 24–25). This language suggests that Overall Creek and Chandler Properties do not intend to shift *all* liability to NBA if they are found liable to Plaintiff; instead, it suggests that they are asking that NBA share its portion of liability if Overall Creek and Chandler Property are found liable to Plaintiff. *See Baker, Watts & Co.*, 876 F.2d at 1103 ("Indemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportion—or pro rata—share of the adverse judgment.").

Having determined that Overall Creek and Chandler Properties are asserting a state-law claim for contribution, the next question is whether it is preempted under the FHA. Caselaw is especially limited on this issue. *See Livingston*, 2023 WL 5962079 at *6 (recognizing that the issue of whether "claims would be preempted by the ADA if they are to be characterized as claims for contribution" is "[l]ess settled" than claims for indemnification). And the court does not find that any of the cases NBA cites are especially persuasive because the courts in those cases did not squarely answer whether a state-law claim for *contribution* is preempted under the FHA. (Doc. No. 52-1, at 8 (citing *Miami Valley*, 2012 WL 4473236 at *4; *Bryan Co.*, 2012 WL 2051861 at *4; *Living Ctr.*, 2014 WL 12586243 at *5).[9] For instance, the Fourth Circuit in *Equal Rights Center*—

---

[9] In the line of cases that NBA cites, the courts appeared to construe the state-law claims at issue as claims for indemnification, not contribution. They therefore did not answer whether claims for contribution are preempted under the FHA or ADA. *See Equal Rights Ctr.*, 602 F.3d at 602 (interpreting claim as one for indemnification because "Archstone really seeks to have Niles Bolton pay *all* damages that arise under the FHA and ADA" (emphasis added)); *Bryan Co.*, 2012 WL 2051861 at *2 (construing claim as one for indemnification as opposed to contribution); *Miami Valley*, 2012 WL 4473236 at *8 ("Cross-Claimants wish to shift the *entirety* of the FHA liability to" third-party defendants (emphasis added)). The district courts in *Living Center* and, as

again, a case that NBA cites—expressly declined to answer whether a state-law claim for *contribution* is preempted under the FHA. 602 F.3d at 604 n.2 ("[W]e do not reach the question of whether a state-law claim for contribution is preempted under federal law.").

But the courts in *AECOM Services* and *Clover Communities*—two decisions Overall Creek and Chandler Properties cite, (Doc. No. 55, at 5)—did decide whether state-law claims for contribution are preempted under federal law.[10] For this reason, the court finds the rationale in these two decisions more persuasive than the rationale in the cases that NBA cites.

In *AECOM Services*, two disabled individuals sued the City of Los Angeles, alleging that the City's bus facility and service failed to meet the accessibility standards under Title II of the ADA, 42 U.S.C. § 12131 *et seq.*; § 504 of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*; and various other California statutes. 854 F.3d at 1152. The City filed a third-party complaint against AECOM Services, Inc. *Id*. According to the third-party complaint, AECOM Services was obligated, by contract, "to defend, indemnify, and hold harmless the City against all suits, claims losses, demands, and expenses, to the extent that any such claim results from the negligent and/or

_____

already stated, *Murphy* found that claims for contribution and indemnity were both preempted under federal law. But they did not appear to view claims for indemnification and contribution as distinct theories of liability. *See Living Ctr.*, 2014 WL 12586243 at *2, *6 (dismissing "Cross-claim for Contribution Indemnity" on preemption grounds); *Murphy*, 2009 WL 3614829 at *2 ("[S]tate law claims for express or implied indemnity and/or contribution . . . are preempted[.]").

[10] The Ninth Circuit in *AECOM Services* considered whether the ADA, not the FHA, preempted state-law claims for contribution. 854 F.3d at 1152. However, courts have found that the ADA and FHA are similar in purpose and statutory scheme. *See Equal Rights Ctr.*, 602 F.3d at 601–02 (recognizing that statutory schemes of the ADA and FHA are "regulatory rather than compensatory", and both provide a clear and comprehensive national mandate to eliminate discrimination (internal quotation marks omitted)); *see also Bryan Co.*, 2012 WL 2051861 at *4 (drawing the same similarities between the FHA and ADA in its preemption analysis). Therefore, the court finds *AECOM Services*' rationale persuasive in the FHA context.

19

intentional wrongful acts or omissions of [AECOM Services], its subcontractors, officers, agents, servants, [or] employees." *Id*. (emphasis omitted). Based on the contractual provisions, the City sought damages for "express contractual indemnity" for AECOM Services' design and construction failures. *Id*. at 1153.

AECOM Services relied on *Equal Rights Center* in arguing that the City's claim for indemnification was preempted under the ADA. *Id*. at 1155. But the Ninth Circuit found the factual circumstances of *Equal Rights Center* materially different from the case at hand because, in *Equal Rights Center,* "the developer 'sought to allocate the *full* risk of loss to [the architect] for the apartment buildings at issue,'" thereby allowing the owner to completely insulate itself from liability under the ADA or FHA. *Id*. at 1156 (quoting *Equal Rights Ctr.*, 602 F.3d at 602). By contrast, the Ninth Circuit determined that the contractual provisions between AECOM Services and the City assigned liability to AECOM Services only to the extent that AECOM Services' *own* actions gave rise to liability, and it therefore construed the City's claim as one contribution rather than indemnification. *Id*. (emphasis added). Accordingly, it determined that "the *Equal Rights Center* court's concern with permitting a responsible party to *completely* insulate itself" was therefore not at play. *Id*. (emphasis added). And given the ADA's comprehensive national mandate for the elimination of discrimination against individuals with disabilities, the Ninth Circuit determined that the City's contribution claim did not "plausibly pose an obstacle to the intended purpose and effect of Title II" of the ADA. *Id*. at 1161 ("[F]inding such claims precluded would . . . hamper the statutes' [ADA and § 504] regulatory purpose."); *see id*. ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act preempt the City's state-law claims for *de facto* contribution, however styled[.]").

*Clover Communities* followed the Ninth Circuit's line of reasoning in *AECOM Services,* when determining whether the plaintiffs' state-law claim for contribution was preempted under the FHA. 676 F. Supp. 3d at 92 (finding the reasoning in *AECOM Services* "persuasive"). The "Original Plaintiffs"—a group of Fair Housing Organizations—alleged that the original defendants, i.e., contractors, the property manager, and various property owners, violated the FHA for failing to design or construct a rental housing complex that complied with the FHA's accessibility requirements. *Id*. at 85–86.[11] The original defendants settled with the original plaintiffs and, pursuant to the settlement agreement, the original defendants agreed, in relevant part, to pay the original plaintiffs $750,000. *Id*. at 86. The original defendants (hereafter "plaintiffs") filed an amended complaint against the architect of the complex and its principal ("defendants"). *Id*. According to the amended complaint, the plaintiffs contracted with the defendants for certain design services related to the housing complex. *Id*. at 86–87. The plaintiffs sued the defendants for contribution under state law. *Id*. at 87.

The defendants moved to dismiss the amended complaint under Rule 12(b)(6), arguing that the plaintiffs' state-law claim for contribution was preempted under the FHA. *Id*. at 85, 87. According to the defendants, a claim for contribution would frustrate the purpose of the FHA. *Id*. at 90. Relying on the Ninth Circuit's rationale in *AECOM Services*, the district court rejected the defendants' argument. *Id*. It explained:

> Although Defendants argue that the purpose of the FHA—the provision of fair housing—would be frustrated if responsible parties such as Plaintiffs could be compensated for losses arising from violations, the same could be said if Plaintiffs' contribution claim

---

[11] The district court in *Clover Communities* refers to the initial parties as the "Original Plaintiffs" and "original defendants," and it refers to the third-party plaintiffs as "Plaintiffs" and the third-party defendants as "Defendants." 676 F. Supp. 3d at 86, 92, 100 n.7. For consistency, the court will do the same when discussing this district court decision.

were preempted. In that case [*AECOM Services*], Defendants, also alleged violators of the FHA, would be insulated from liability under the Act . . . . This would reduce Defendants' incentives to comply with the FHA, which in turn frustrates the objective of the Act to provide fair housing, including by designing and constructing multifamily dwellings in accordance with the Act's accessibility guidelines.

*Id*. at 92–93 (citing *AECOM Serv.*, 854 F.3d at 1156, 1161). The district court concluded that the plaintiffs' contribution claim, therefore, was not barred by obstacle preemption under the FHA. *Id*. at 93.

Similar to *AECOM Services* and *Clover Communities*, the court finds that Overall Creek and Chandler Properties' claim for contribution is not preempted under the FHA. As already stated, when determining whether a state law operates as a sufficient obstacle, courts must examine the federal statute as a whole and identify its purpose and intended effects. *Crosby*, 530 U.S. at 373. The primary purpose of the FHA is "to provide . . . for fair housing throughout the United States," 42 U.S.C. § 3601, by "eradicat[ing] discriminatory practices within a sector of our Nation's economy[,]" *Tex. Dep't of Hous. & Cmty. Aff. v. Inclusive Cmty. Project*, 576 U.S. 519, 539 (2015). In a similar vein, the FHA's comprehensive statutory scheme means that Congress intended to prevent a broad range of discriminatory housing practices. *See S & R Dev. Estates v. Town of Greenburgh*, 336 F. Supp. 3d 300, 313 (S.D. N.Y. 2018) ("The FHA is 'a detailed housing law, applicable to a broad range of discriminatory practices and enforceable by a complete arsenal of federal authority.'" (quoting *Jones v. Alred H. Mayer Co.*, 392 U.S. 409, 417 (1968)). And "failure to design and construct" falls within the meaning of discrimination under the FHA. 42 U.S.C. § 3604(3)(C).

Allowing Overall Creek and Chandler Properties to pursue a state-law claim for contribution against NBA—a potential wrongdoer whom they claim they relied on in designing

and constructing the Property, (*see* Doc. No. 43, at 4–5)—would not seem to stand as an obstacle to the FHA's large-scale objective to eradicate discriminatory housing practices. *See Torres*, 437 F. Supp. 3d at 643 ("The mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption[.]"). And NBA does not otherwise explain how a claim for contribution, in which it would not face the *full* risk of potential liability, would serve as an obstacle to the FHA's objective. Again, analysis under the Supremacy Clause begins with a presumption against preemption, and the court is not persuaded that "the clear and manifest purpose of Congress[,]" in enacting the FHA, was to preempt a state-law claim for contribution. *Rice*, 331 U.S. at 230.

To conclude, NBA has not established that Overall Creek and Chandler Properties' state-law claim for contribution is preempted under the FHA. *See In re Ford Motor Co.*, 65 F.4th at 859 ("[A defendant] bears the burden of proof in establishing preemption as grounds for dismissal."). NBA'S Motion to Dismiss this claim under Rule 12(b)(6) based on preemption grounds will therefore be denied.

### 2. Claim 2: State-Law Claim for Breach of Contract

Lastly, the court will consider whether Overall Creek and Chandler Properties' state-law claim for breach of contract is preempted under the FHA.

NBA, relying again on *Murphy* and *Equal Rights Center*, argues that Overall Creek and Chandler Properties' breach-of-contract claim is a *de facto* claim for indemnification and therefore must fail as a matter of law. (Doc. No. 52-1, at 2, 9). In response, Overall Creek and Chandler Properties argue that their breach-of-contract claim should not be dismissed because it is a *de facto* claim for *contribution*, not indemnification, and they cite *Livingston* in support of their argument. (Doc. No. 55, at 8). In addition, they maintain that the court, at this stage, "must accept

23

the factual allegations set forth in the [Third-Party] complaint as true," (*id.* at 3 (citing *Iqbal*, 556 U.S. at 662)), and draw "all reasonable inferences" in their favor, (*id.* (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002)). In reply, NBA reiterates that *Murphy* justifies dismissal of Overall Creek and Chandler Properties' breach-of-contract claim on preemption grounds. (Doc. No. 57, at 2–3). But NBA raises the following argument as well: "Additionally, NBA and Third-Party Plaintiffs are not in privity of contract, and on its face, Third-Party Plaintiffs are not intended third-party beneficiaries to the contract attached as Exhibit 2 [the October 6, 2016 agreement] to the Third-Party Complaint, nor does that contract create a contractual right to Contribution." (*Id.* at 2 (emphasis omitted)).

Before turning to the parties' preemption-based arguments, the court will consider whether NBA's latter argument is proper because it, in some ways, reads as a new argument that NBA raises for the first time in its reply.[12] "It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.*, 367 F. Supp. 2d 1191, 1214 n.28 (S.D. Ohio

---

[12] To clarify, NBA, in arguing that no enforceable contract exists, also appears to attempt to distinguish *Livingston* from this case. (*See* Doc. No. 57, at 4 (citing *Livingston* for the proposition that "the cases relied upon by" Overall Creek and Chandler Properties "are distinguishable from the case at bar" because the parties in *Livingston* entered a contract). But NBA does not always cite *Livingston* in support of its argument, which suggests it is raising a new issue in its Reply. (*See id.* at 2 (arguing elsewhere in its Reply, without citing legal authority, that "NBA and Third-Party Plaintiffs are not in privity of contract, and Third-Party Plaintiffs are not intended third-party beneficiaries to the contract attached as Exhibit 2 to the Third-Party Complaint, nor does the contract create a contractual right to contribution" (emphasis omitted))). To the extent that NBA, in making this argument, is attempting to distinguish *Livingston*, it is a proper argument because NBA would be responding directly to an issue that Overall Creek and Chandler Properties raised in its Response. (*See* Doc. No. 55, at 8 (stating that *Livingston* "dealt directly with this issue regarding a third-party plaintiff's state law claims for breach of contract"). And the court will endeavor to address NBA's attempt to distinguish *Livingston* from this case later in this opinion.

24

2005) (internal quotation marks and citations omitted). And "[g]enerally speaking, arguments raised for the first time in reply briefs are waived," *Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (citations omitted), because "the non-moving party ordinarily has no right to respond to the reply brief," *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citation omitted). Accordingly, "[a]s a matter of litigation fairness and procedure," courts "must treat [such issues] as waived." *Scottsdale Ins. Co.*, 513 F.3d at 553 (citation omitted).

NBA, in its original motion, neither argued whether an enforceable contract exists between itself and Overall Creek and Chandler Properties, nor referenced the October 6, 2016 agreement. (Doc. No. 52-1). Instead, its arguments were limited to whether Overall Creek and Chandler Properties' state-law claims are preempted under federal law. (*Id*.). Overall Creek and Chandler Properties, in their Response, also did not raise the issue of whether an enforceable contract exists between them and NBA that would have prompted NBA to raise this issue in its Reply. NBA's argument that "no contract exists" is therefore improper, and the court declines to address the merits of this argument. (Doc. No. 57, at 5); *see Foster v. MasTec North Am.*, No. 3:21-cv-00737, 2023 WL 3513685, at *5 (M.D. Tenn. May 17, 2023) (declining to consider "the defendant's arguments in its Reply . . . to which the plaintiff has not had an opportunity to respond").[13]

---

[13] NBA's argument is also improper because it raises a factual question, <u>i.e.</u>, whether an enforceable contract between itself and Overall Creek and Chandler Properties exists in the first instance. (Doc. No. 57, at 5). But "[t]he Court cannot resolve questions of fact on a motion to dismiss." *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). At this stage, the court, therefore, also declines to consider whether an enforceable contract existed between NBA and Overall Creek and Chandler Properties because it is a factual issue that is improper for the court to resolve on a motion to dismiss. *See Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part) ("[T]he court is not to resolve issues of fact in the context of a motion to dismiss[.]"); *see also Hard Surfaces Solutions, LLC v. Constr. Mgmt.*, 544 F. Supp. 3d 825, 829 (M.D. Tenn. 2021)

The court will now address the parties' preemption-based arguments. NBA's assertion that a breach-of-contract claim is a *de facto* claim for indemnification, and therefore must fail as a matter of law, is an accurate statement of law. The consensus among federal courts is that breach-of-contract claims that are *de facto* claims for indemnification are, in fact, preempted under the FHA. *See, e.g.*, *Equal Rights Ctr.*, 603 F. Supp. 2d at 824 ("If they are *de facto* claims for indemnification, they too are preempted." (citation and internal quotation marks omitted)); *Miami Valley*, 2012 WL 4473236 at *9 (agreeing that *de facto* claims for indemnification fail as a matter of law); *United States v. Quality Built Const., Inc.*, 309 F. Supp. 2d 767, 779 (E.D. N.C. 2003) ("[C]laims for breach of contract . . . are in fact *de facto* claims for indemnification and fail as a matter of law."); *Baker, Watts & Co.*, 876 F.2d at 1108 ("[D]e facto* claims for indemnification . . . are preempted."). But NBA does not consider whether Overall Creek and Chandler Properties' breach-of-contract claim could also be construed as a *de facto* claim for contribution. And *Livingston*, which Overall Creek and Chandler Properties cite, warrants discussion because the district court there determined that a breach-of-contract claim that is a *de facto* claim for contribution is not preempted under the ADA. 2023 WL 5962079 at *7.[14]

In *Livingston*, the plaintiffs, County of Livingston ("the County") contracted with the defendants, Dewberry Architects, for the design and construction of the Livingston County Law

---

(declining to consider factual issue of whether contractor or project owner breached the contract at the motion-to-dismiss stage).

[14] The court finds *Livingston* persuasive in the FHA context as well. As already stated, courts have found that the ADA and FHA are similar in purpose and statutory scheme. *See Equal Rights Ctr.*, 602 F.3d at (recognizing that both the statutory scheme of the ADA and FHA is "regulatory rather than compensatory" and that they both provide a clear and comprehensive national mandate to eliminate discrimination (internal quotation marks omitted)); *see also Bryan Co.*, 2012 WL 2051861 at *4 (drawing the same similarities between the FHA and ADA in its preemption analysis).

& Justice Center. *Id*. at *1. The Office of the Illinois Attorney General ("OAG") notified the County that the Law & Justice Center violated certain provisions of the ADA. *Id*. The County entered into a settlement agreement with the OAG, and thereafter the County sued the defendants for breach of contract for failing to design the facilities in accordance with the ADA and certain regulations. *Id*. at *1–2.

First, the district court interpreted the language of the contract and complaint to determine whether it could construe the County's state-law claim for breach-of-contract as a *de facto* claim for contribution or *de facto* claim for indemnification. *Id*. at *7. Drawing "all permissible inferences in favor of the nonmovant [the County]," the district court found that "it is reasonable that the only damages sought in the Complaint are those for which the *Defendant* is actually responsible and liable." *Id*. at *3, *7 (emphasis added). It also turned to the language of the contract, noting that it did not "include any language concerning a contractual right to indemnification . . . . In other words, Plaintiffs' causes of action are fairly characterized as claims for *de facto* contribution, not claims for *de facto* indemnification." *Id*. at *7.

Second, it determined whether the County's *de facto* claim for contribution was preempted under the ADA. And because it recognized that *Equal Rights Center* "expressly declined to 'reach the question of whether a state-law claim for contribution is preempted under federal law,'" *id*. at *6 (quoting *Equal Rights Ctr.*, 602 F.3d at 604 n.2), it applied the Ninth Circuit's rationale in *AECOM Services*. *Id*. ("Plaintiffs' causes of action are fairly characterized as claims for *de facto* contribution . . . . Therefore, the reasoning in *AECOM Servs. Inc.*, is highly relevant to the outcome of this case."); *see id*. ("The court is persuaded by the reasoning in *AECOM Servs., Inc.*, and adopts it here."). The district court therefore concluded that the County's "state law claims for breach of

contract" were not preempted by the ADA, "as they constituted permissible claims for *de facto* contribution." *Id*. at *8.

The court is mindful that, at this stage, it "must construe the [Third-Party] complaint in a light most favorable" to Overall Creek and Chandler Properties, *Bishop*, 520 F.3d at 519 (citation omitted), and, in doing so, the court reads their Third-Party Complaint as raising both a *de facto* claim for indemnification and a *de facto* claim for contribution. In one paragraph, the language is all-inclusive, because Overall Creek and Chandler Properties state that they are seeking "damages including but not limited to *any* cost to remediate the Property" based on NBA's breach of contract. (Doc. No. 43 ¶ 45 (emphasis added)). This language suggests that they are seeking indemnification from NBA because they are asking that *any* costs to remediate the Property be allocated to NBA. *Cf. Bryan Co.*, 2012 WL 2051861 at *2 (construing the plaintiff's "claims for any and all types of relief in any and all such amounts" as claims for indemnification (emphasis omitted)). Another paragraph of the Third-Party Complaint, however, does not include language that is all-inclusive, because Overall Creek and Chandler Properties ask for damages "on the basis of apportionment of responsibility . . . based on Niles Bolton's breach of contract." (Doc. No. 43 ¶ 25). This language suggests that they are seeking contribution because they are asking to share in any adverse judgment with NBA. *See Baker, Watts & Co.*, 876 F.2d at 1103 ("[C]ontribution requires each wrongdoer to pay his proportion—or pro rata—share of the adverse judgment.").

To the extent that Overall Creek and Chandler Properties are asking for the entire loss to be allocated to NBA, as a result of NBA's alleged breach of contract, the court construes their breach-of-contract claim as a *de facto* claim for indemnification, which is preempted under the FHA. *See Equal Rights Ctr.*, 603 F. Supp. 2d at 824 ("If they are *de facto* claims for indemnification, they too are preempted." (citation and internal quotation marks omitted)); *Miami*

28

*Valley*, 2012 WL 4473236 at *9 (stating that *de facto* claims for indemnification fail as a matter of law); *United States v. Quality Built Const., Inc.*, 309 F. Supp. 2d 767, 779 (E.D. N.C. 2003) ("[C]laims for breach of contract . . . are in fact *de facto* claims for indemnification and fail as a matter of law."); *Baker, Watts & Co.*, 876 F.2d at 1108 ("[D]e facto claims for indemnification . . . are preempted."). To the extent, however, that Overall Creek and Chandler Properties are only asking NBA to pay its "proportion—or pro rata—share of the adverse judgment" arising out of NBA's alleged breach of contract, the court construes their breach-of-contract claim as a *de facto* claim for contribution, which is not preempted under the FHA. *See Livingston*, 2023 WL 5962079 at *8 ("Plaintiffs' state law claims for breach of contract . . . are not preempted . . . as they constituted permissible claims for *de facto* contribution."); *see also AECOM Serv.*, 854 F.3d at 1161 (holding that state-law claims for *de facto* contribution, "however, styled," are not preempted under the ADA).

As a final argument, NBA attempts to distinguish *Livingston* from this case, but the court does not find its argument persuasive. NBA states that, unlike this case, an enforceable contract existed between the owner and "party from which it sought contribution" in *Livingston*. (Doc. No. 57, at 4).[15] But NBA does not explain how that fact, *itself*, is material to the question of preemption

---

[15] NBA misquotes *Livingston* for the proposition that the contract contained an express provision, "whereby the [third-party] defendant agreed to defend, indemnify and hold [the owner] . . . harmless to the extent that any claim results from the negligent and/or the intentional wrongful acts or omissions of [the third-party defendant]." (Doc. No. 57, at 4 (internal quotation marks omitted)). NBA is quoting *AECOM Services*. 854 F.3d at 1152–53. In addition, the contract in *Livingston* did not appear to include a separate provision for indemnification, as NBA claims. 2023 WL 5962079 at *7 ("[T]he provisions of the contract that the County alleges the Defendant has breached . . . do not include any language concerning a contractual right to indemnification."). Regardless, the court in *Livingston*, "draw[ing] all permissible inferences in favor of the nonmovant," found that the plaintiffs' claims could be fairly characterized as *de facto* claims for contribution. *Id*. at *3, *7. And for the reasons the court explains in the body of this opinion, NBA

29

because, although the district court in *Livingston* turned to the language of the contract to determine whether the breach-of-contract claim was a *de facto* claim for indemnification or a *de facto* claim for contribution, it also turned to the language of the *complaint*, as this court has done here. *See Livingston*, 2023 WL 5962079 at *7 ("The County's claims as alleged in the *Complaint* do not seek to hold defendant liable for the total monetary damage arising from the Facilities' failure to comply with Title II of the ADA." (emphasis added)); *id*. ("In constru[ing] all inferences in the nonmovant's favor, it is reasonable that the only damages sought in the *Complaint* are those for which the Defendant is actually responsible and liable." (emphasis added) (internal quotation marks omitted)). Again, the court, at this stage "must construe the [Third-Party] complaint in a light most favorable" to Overall Creek and Chandler Properties. *Bishop*, 520 F.3d at 519 (citation omitted). And for the reasons that this court already explained, Overall Creek and Chandler Properties' breach-of-contract claim can be "fairly characterized" as a *de facto* claim for indemnification and as a *de facto* claim for contribution. *Livingston*, 2023 WL 5962079 at *7.

To conclude, NBA's Motion to Dismiss will be granted the extent that it moves to dismiss Overall Creek and Chandler Properties' breach-of-contract claim as an improper *de facto* claim for indemnification. However, NBA's motion will be denied to the extent that it moves to dismiss Overall Creek and Chandler Properties' breach-of-contract claim in its entirety because the court also construes it as a *de facto* claim for contribution.

---

does not explain why the factual distinctions it attempts to make are material to the court's preemption analysis.

**IV.    CONCLUSION**

For the foregoing reasons, NBA's Motion to Dismiss Overall Creek and Chandler Properties' Third-Party Complaint (Doc. No. 52) is **GRANTED in part** and **DENIED in part** as follows:

    (1) NBA's Motion is **GRANTED** to the extent that it moves for dismissal of Overall Creek and Chandler Properties' state-law claim for equitable indemnification because it is preempted under the FHA. Overall Creek and Chandler Properties' state-law claim for equitable indemnification is **DISMISSED WITH PREJUDICE**;

    (2) NBA's Motion is **DENIED** to the extent that it moves for dismissal of Overall Creek and Chandler Properties' state-law claim for equitable contribution because it is not preempted under the FHA; and

    (3) NBA's Motion is **GRANTED in part** and **DENIED in part** to the extent that it moves for dismissal of Overall Creek and Chandler Properties' breach-of-contract claim in its entirety:

        a.  It is **GRANTED** to the extent that Overall Creek and Chandler Properties' breach-of-contract claim is a *de facto* claim for indemnification because a *de facto* claim for indemnification is preempted under the FHA. Overall Creek and Chandler Properties' breach-of-contract claim, to the extent that it is a *de facto* claim for indemnification, is therefore **DISMISSED WITH PREJUDICE**; and

        b.  It is **DENIED** to the extent that Overall Creek and Chandler Properties' breach-of-contract claim is a *de facto* claim for contribution because a *de facto* claim for contribution is not preempted under the FHA.

IT IS SO ORDERED.

                                         ALETA A. TRAUGER
                                         UNITED STATES DISTRICT JUDGE