**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CYNTHIA GEORGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00297** |
| | ) | **Judge Aleta A. Trauger** |
| **OVERALL CREEK APARTMENTS,** | ) | |
| **LLC; CHANDLER PROPERTIES, LLC;** | ) | |
| **B.L. BENNETT & ASSOCIATES, INC.;** | ) | |
| **DENHOLTZ 5150 JB OWNER, LLC;** | ) | |
| **BBS TAFT 5150 JB OWNER, LLC; and** | ) | |
| **CPJB DRIVE OWNER, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **OVERALL CREEK APARTMENTS,** | ) | |
| **LLC AND CHANDLER PROPERTIES,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Third-Party Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NILES BOLTON ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

## <u>MEMORANDUM</u>

Plaintiff Cynthia George filed this lawsuit against the designers, developers, and owners of a multifamily housing development, alleging violations of the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. § 3601 *et seq.* Before the court are (1) George's Motion for Partial Summary Judgment (Doc. No. 71) and (2) the Motion for Summary Judgment filed by defendants Overall Creek Apartments, LLC ("Overall Creek") and Chandler Properties, LLC ("Chandler")

(Doc. No. 73), in which defendant B.L. Bennett & Associates, Inc. ("Bennett") has joined (Doc. No. 78).

The primary basis for the moving defendants' motion is that the plaintiff's FHA claim is barred by the applicable statute of limitations. The basic facts supporting that argument are undisputed. Because the court finds that the plaintiff's FHA claim is time-barred, the court will grant the defendants' motion and deny as moot the plaintiff's Motion for Partial Summary Judgment.

## I.    RULE 56 STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.*

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

In reviewing the evidence, the court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir.

2018). Credibility judgments and the weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

## II.    UNDISPUTED MATERIAL FACTS[1]

This dispute arises out of the design and construction of the Overall Creek Apartments (the "Property"), an apartment complex located in Murfreesboro, Tennessee. More specifically, plaintiff Cynthia George, who alleges that she is a "handicapped individual [who] uses a wheelchair" (Doc. No. 37, First Amended Complaint ("FAC") ¶ 3), asserts that the defendants failed to design and construct the Property in accordance with the FHA, specifically 42 U.S.C. § 3604. Overall Creek was the original owner of the Property, and Chandler was the majority shareholder in Overall Creek at the time Overall Creek owned the Property. Overall Creek sold the Property to defendants Denholtz 5150 JB Owner, LLC, BBS Taft 5150 JB Owner, LLC, and CPJB Drive Owner, LLC (collectively, the "Remediation Defendants") on August 15, 2022.[2]

The Simpson Group, Inc. ("Simpson Group") was the property management company for the Property. Michael Simpson is the owner of the Simpson Group and a shareholder in Overall Creek. Simpson, through the Simpson Group, was responsible for the operation, management, and marketing of the Property beginning January 1, 2020 and continuing through the sale of the Property in August 2022.

---

[1] The facts set forth herein are undisputed and viewed in the light most favorable to the plaintiff, as the non-moving party, unless otherwise indicated. Factual statements for which no citation is provided are drawn from the plaintiff's Response to Overall Creek's and Chandler's Statement of Undisputed Material Facts (Doc. No. 92-1) and are undisputed for purposes of the defendants' Motion for Summary Judgment.

[2] The Remediation Defendants have neither joined nor opposed the other defendants' summary judgment motion. As they explain in response to the plaintiff's Motion for Partial Summary Judgment, the Remediation Defendants are not alleged to have been involved in the design or construction of the Property, and they were added to this action solely as Rule 19 necessary parties for purposes of ensuring access to the Property in order to effect remediation, in the event the plaintiff prevailed on her claims. (*See* Doc. No. 79, at 1–2.)

Apartment Unit No. 1107, a unit within the Property, was never listed for rent while the Property was owned by the defendants and was never intended to be made available for rent to the general public during Overall Creek's ownership of the Property. (Doc. No. 76, Affidavit of Mike Simpson ("Simpson Aff.") ¶ 7.)[3] Instead, Unit No. 1107 was used solely as a marketing tool meant to assist in the sale and/or rent of the 383 other units actually meant for rent or sale on the Property. (*Id.*; *see also id.* ¶¶ 15–22 (attesting to the authenticity and correctness of the February 2021 and April 2021 Rent Rolls attached to Simpson's Affidavit and that they were business records made at or near the time of the acts and events appearing on them); Doc. Nos. 76-1, at 1 and 76-2, at 1 (identifying Unit No. 1107 as "MODEL" and not including it among the number of vacant units).) According to Simpson, the usage of Unit No. 1107 as a marketing tool was part of the business plan for monetizing the Property. (Simpson Aff. ¶ 8.) To prepare and maintain Unit No. 1107 in that capacity, the unit was furnished with "furniture, art, bed linens, and other household accessories" for the purpose of showing the unit to prospective residents during guided tours of the Property. (*Id.* ¶ 9.) Simpson further attests that "maintaining a model rental unit" in this fashion "is a common practice within the multi-family residential unit industry" and has been a common and routine practice "in all of the property development business ventures [Simpson and his companies] have been involved in for the past 20 years." (*Id.* ¶¶ 10, 11.)

Aside from Unit No. 1107, the last unoccupied individual apartment unit intended for occupancy and tenant use on the Property was first occupied by a tenant on March 19, 2021. (*Id.* ¶ 12; *see also* Feb. 2021 and April 2021 Rent Rolls, Doc. Nos. 76-1, 76-2.)

---

[3] The plaintiff has filed Objections and Motion to Strike Paragraphs 13 and 14 of the Affidavit of Mike Simpson and Paragraphs 10 and 11 of the Affidavit of David Chandler. (Doc. No. 90.) The court has not considered or relied on either of the paragraphs of the Simpson Affidavit to which the plaintiff objects in ruling on the present motion and has not considered the Chandler Affidavit at all.

The plaintiff attempts to dispute whether Unit No. 1107 was truly a "model" unit, essentially because it is identical in design and construction to other residential units of its type on the Property and does not satisfy building code requirements applicable to a model unit which, by definition, according to the plaintiff, would be permanently open to the public. She relies for these assertions upon the Supplemental Declaration of Nicholas Heybeck, a professional engineer whom the plaintiff has identified as an expert witness in this case. In his Supplemental Declaration, Heybeck attests that Unit No. 1107 could not qualify under the relevant municipal code provisions as a "model" unit open to the public, for a variety of reasons, all supported with reference to exhibits attached to his Declaration. According to Heybeck:

> a) Unit 1107 was designed by the architect and built by the contractor as a typical apartment style living unit. . . .
>
> b) Unit 1107 was approved and permitted by the city as an apartment style living unit, not a model unit. The City of Murfreesboro Commercial Building Permit Per 2012 International Building Code describes the name of the project as a Building w/ 384 Units. . . . Unit 1107 would need to be included in this tally for the Overall Creek Apartments to have 384 tenant occupancy units. . . .[T]he city issued separate [Certificates of Occupancy ("CO")] [for] actual common spaces including the Pergola, Picnic, Pool, Trash, Mail Kiosk, and actual public space including the Clubhouse. . . . [T]he clubhouse CO specifies a "B Business occupancy type" while Building 1, which includes unit 1107, specifies an R-2 Residential, multiple family designation further evidencing that Unit 1107 was not permitted as a model unit open to the public.
>
> c) Unit 1107 would violate a multitude of building codes if it were considered public space. If in fact the unit was to be considered a model unit and open to the public, then a different set of construction standards must be used and the unit in question would fail to pass these standards. Just considering accessibility requirements, a tenant unit is required to comply with Part IV 24 CFR Chapter I Final Fair Housing Accessibility Guidelines while a public space must comply with the 2010 ADA Standards for Accessible Design. These requirements are drastically different and unit 1107 was in fact designed generally under the Fair Housing Accessibility Guidelines. As a comparison, the 2010 ADA Standards, which would apply to a public model unit, requires 60" clearance at water closets (toilets) while the Fair Housing Guidelines requires 33". The measured clearance at the water closets in unit 1107 is approximately 35". While there are numerous examples, I will provide a second one. At the bathroom sinks, the ADA requires knee clearance and toe clearance for a forward approach to the sink. Under the Fair Housing Rules, it is

sufficient to provide a parallel approach centered on the sink. Both bathrooms in unit 1107 utilize this parallel approach. It is inconsistent and incorrect for the owner to argue this is a model unit (public space) . . . when it was neither designed nor constructed to comply with a multitude of other applicable accessibility and general building code violations if the space was to be considered public. As a final example, a designated public space model unit would require fire code signage (*i.e.*, exit signage). There is no fire code signage existing in unit 1107.

*d) There is no signage provided showing unit 1107 as public space, in fact it is designated no differently than any other unit.* . . .

e) When I inspected the Property, the units I was provided access to were stated to be representative of other leasable tenant units of the same type . . . .

f) Lastly, the current owner or potential future owners could decide to rent unit 1107 at any point in time in the future. This is due to the many reasons discussed above, however mainly due to the fact that Unit 1107 is a standard apartment unit.

(Doc. No. 92-2, at 7–9, ¶¶ 3(a)–(e) (emphasis in original; footnoted citations and internal record citations omitted).) Notably, however, neither Heybeck nor the plaintiff contends that Unit No. 1107 is not still displayed as a model unit or that it has ever been offered for sale or rent by the current or previous owners of the Property.

Cynthia George visited the Property in February 2023. She does not allege that she sought or desired to buy or rent a unit at the Property. Rather, she simply asserts that she "looked at one or more units" and "observed and encountered accessibility barriers that would interfere with her ability to access and use the facilities" and that would be a "deterrent to a disabled person" who sought to rent a unit at the Property. (FAC ¶ 27.)

She originally filed this lawsuit on March 31, 2023, asserting that she is an "aggrieved person" as defined by 42 U.S.C. § 3602(i) and that the defendants failed to design and construct the Property with accessible and adaptable features for persons with disabilities, in violation of the FHA.

### III.    DISCUSSION

The defendants assert that George's claim under the FHA is barred by the two-year statute of limitations contained in 42 U.S.C. § 3613(a)(1)(A). The plaintiff argues in response that (1) the statute of limitations did not begin to run until the day she visited the Property, which took place less than two years before she filed suit; and (2) in any event, even if the statute began to run on the date the last unit at the Property was leased or sold, it is undisputed that Unit No. 1107 was not leased prior to March 31, 2021, and the defendants' contention that Unit No. 1107 does not count as a leasable unit, because they subjectively never intended to make it available for sale or rent, is refuted by the fact that it was designed and constructed identically to other units of its type and was not constructed as a "model unit" in the architectural plans for the Property, as set forth in Heybeck's Supplemental Declaration.

The FHA makes it unlawful to "discriminate in the sale or rental, or otherwise make unavailable or deny a dwelling to any buyer or renter." 42 U.S.C. § 3604(f)(1)–(2). Under § 3604(f)(3)(C), "discrimination" is defined to include the failure to design and construct "covered multifamily dwellings for first occupancy" in such a manner that the public and residential areas of such properties are "readily accessible and usable by handicapped persons" and otherwise incorporate certain specific adaptive design features. 42 U.S.C. § 3604(f)(3)(i)–(iii). This is the provision under which the plaintiff brings her FHA claim.

The statute permits a person "aggrieved" by a prohibited discriminatory practice to "commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory practice, . . . whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). Construing this clause, the Sixth Circuit has held—albeit in an unreported case—that, "[i]n the context of the construction and design of multifamily dwelling units that are inaccessible to disabled individuals, the discriminatory act occurs during the sale or the rental of a unit. Thus, once a unit has been sold

or rented, the discriminatory act is complete." *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 480 (6th Cir. 2006).

Although the court "explicitly limit[ed]" its holding in *Olde St. Andrews* to the facts of that case, which involved the sale of units in a multifamily development, *id.* at 479, district courts within the Sixth Circuit have generally concluded that the same rationale applies to developments that offer rental units, holding that the limitations period for claims based on design and construction begins to run when the last available rental unit is rented for the first time. *See, e.g.*, *Miami Valley Fair Hous. Ctr., Inc. v. Preferred Living Real Est. Invs., LLC*, No. 2:15-CV-2737, 2018 WL 4690790, at *10 (S.D. Ohio Sept. 28, 2018) ("Because the language of 42 U.S.C. § 3604(f)(1) provides that it is unlawful to discriminate in the 'sale or rental' of covered multifamily dwellings, the Court concludes that the same rationale applies here, and that in circumstances where a developer or others are alleged to have engaged in a continuing practice with regard to non-compliant design and construction, the continuing violations doctrine may toll the running of the statute of limitations until the last unit of all implicated developments is initially rented."); *Hous. Rsch. & Advoc. Ctr. v. WXZ Residential Grp./Circle Lofts 118 LLC*, No. 1:16-CV-2032, 2017 WL 1078956, at *2 (N.D. Ohio Mar. 22, 2017) ("The statute of limitations starts running when a housing development sells or rents its final unit." (footnoted citations omitted)); *Hous. Advocs., Inc. v. Berardi & Partners, Inc.*, No. 1:10-CV-0790, 2010 WL 4905547, at *6 (N.D. Ohio Nov. 29, 2010) (applying *Olde St. Andrews* in the context of rental units, holding that the limitations period began to run upon "the initial rental of the final unit" in the defendant's apartment complex). In *Berardi & Partners*, the court expressly noted that the tolling of the statute of limitations until the initial rental of the final unit "prevents the limitations period from being re-triggered each time a previously-rented unit is vacated and then re-let" and "avoids permitting an

enduring threat of litigation that Defendants fear would render the statute of limitations meaningless." *Berardi & Partners*, Inc., 2010 WL 4905547, at *6.

In the absence of any other guidance from the Sixth Circuit in the intervening eighteen years since *Olde St. Andrews* was issued, this court likewise finds that the limitations period for the plaintiff's FHA claim based upon violations of design and construction requirements expired upon the "initial rental of the final unit" in the Property. The question, then, is when that occurred.

As set forth above, the defendants contend that the initial rental of the final unit available for sale or rent at the Property occurred on March 19, 2021, more than two years before the plaintiff filed suit, making her FHA claim time-barred. The defendants contend that Unit No. 1107 should not be included in this calculation, because it was never available or offered for rent—at least while they owned the Property—and that it was instead set aside, furnished, and used purely as a "model" unit for marketing and monetization purposes. Those assertions are undisputed.

The plaintiff nonetheless responds, in essence, that there is a material factual dispute as to whether Unit No. 1107 was actually a "model" unit, based on opinion testimony from her proposed expert that the unit was built just like any other residential unit at the Property and did not comply with various codes and regulations pertaining to a "permanent" model unit open to the public.

Accepting as true Heybeck's testimony,[4] the court is not persuaded that the fact that the unit did not meet other legal requirements for designation of the space for "public," as opposed to "residential," use obviates the simple, undisputed fact that Unit No. 1107 was set aside for marketing purposes, was never intended to be made available for rent, and to date has apparently never been offered or available for rent as a residence. Simpson's testimony that the setting aside

---

[4] The defendants object to the Supplemental Heybeck Declaration as a new expert report providing opinions that were not disclosed within the time period provide by the case management deadlines governing this case.

of a unit to function as a model unit for marketing and monetization purposes is a common practice in the industry is undisputed, and to hold that the use of such model units effectively tolls the statute of limitations indefinitely would defeat Congress's intent in enacting the limitations period in the first place. *Accord Olde St. Andrews*, 210 F. App'x at 480 (noting that to toll the limitations period "until the noncompliant conditions are remedied" would be "inconsistent with § 3604(f)").

It is undisputed on the record that the last unit at the Property available for rent was initially rented on March 19, 2021. George filed this lawsuit on March 31, 2023, more than two years after that date. As a result, her FHA claim is time-barred. Moreover, to the extent the plaintiff intended to state a claim under Title III of the ADA as well (which is not entirely clear from the FAC), ADA claims in Tennessee are governed by the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a)(1)(A), not the two-year period set out in the FHA, making any ADA claim time-barred as well. *See McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012) (holding that the appropriate statute of limitations for a Title II ADA claim is the relevant state's limitations period applicable to personal injury actions); *accord Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1037 (7th Cir. 2021) (applying Indiana's statute of limitations for personal injuries to Title III ADA claim); *Abeyta v. Stonecrest Med. Ctr.*, No. 3:18-CV-0386, 2018 WL 3472820, at *5 (M.D. Tenn. July 18, 2018) (Trauger, J.) (noting that the plaintiff's Title III ADA claim would be subject to the one-year limitations period for personal injury contained in Tenn. Code Ann. § 28-3-104(a)(1)(A).

## IV. CONCLUSION

For the reasons set forth herein, the defendants' Motion for Summary Judgment (Doc. No. 73) will be granted, and this case will be dismissed in its entirety. The plaintiff's Motion for Partial Summary Judgment and all other pending motions will be denied as moot.

Case 3:23-cv-00297    Document 99    Filed 06/21/24    Page 10 of 11 PageID #: 2340

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge